No. 23-3209

_____

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

_____

SANTANU DAS,

Plaintiff-Appellant,

v.

TATA CONSULTANCY SERVICES, LTD. and AMIT BAJAJ,

Defendants-Appellees.

_____

Appeal From the United States District Court
For the Northern District of Illinois, Eastern Division
Case No. 1:22-CV-06988
The Honorable Judge Virginia Kendall

_____

## BRIEF OF DEFENDANTS-APPELLEES
## TATA CONSULTANCY SERVICES, LTD. and AMIT BAJAJ

_____

SHEPPARD MULLIN RICHTER &
HAMPTON LLP
Shawn D. Fabian
David M. Poell
Umar Sattar
321 N. Clark Street, 32nd Floor
Chicago, Illinois 60654
Tel: (312) 499-6300
*Counsel for Defendants-Appellees*

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-3209

Short Caption: Santanu Das v. Tata Consultancy Services, Ltd., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Tata Consultancy Services, Ltd. and Amit Bajaj

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Sheppard Mullin RIchter & Hampton LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

Tata Sons Private Limited

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: s/ Shawn D. Fabian    Date: March 11, 2024

Attorney's Printed Name:  Shawn D. Fabian

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☑  **No** ☐

Address:  Sheppard Mullin Richter & Hampton LLP, 321 N. Clark Street, 32nd Floor, Chicago, IL 60654

Phone Number: 312-499-6300    Fax Number:  312-499-6301

E-Mail Address: sfabian@sheppardmullin.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Save As    Clear Form

Appellate Court No: 23-3209

Short Caption: Santanu Das v. Tata Consultancy Services, Ltd., et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐        **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    Tata Consultancy Services, Ltd. and Amit Bajaj

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    Sheppard Mullin RIchter & Hampton LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)        Identify all its parent corporations, if any; and

             Tata Sons Private Limited

    ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

             N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: s/ David M. Poell                    Date: March 11, 2024

Attorney's Printed Name: David M. Poell

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☑  **No** ☐

Address: Sheppard Mullin Richter & Hampton LLP, 321 N. Clark Street, 32nd Floor, Chicago, IL 60654

Phone Number: 312-499-6300                    Fax Number: 312-499-6301

E-Mail Address: dpoell@sheppardmullin.com

rev. 12/19 AK

# TABLE OF CONTENTS

**Page**

STATEMENT IN SUPPORT OF ORAL ARGUMENT ............................................. viii

JURISDICTIONAL STATEMENT ................................................ 1

STATEMENT OF THE ISSUES FOR REVIEW ......................................... 2

STATEMENT OF THE CASE .................................................... 3

    A.    Nature of the Case.................................................. 3

    B.    Proceedings and Disposition Below ........................................ 4

SUMMARY OF ARGUMENT ................................................. 5

STANDARD OF REVIEW ................................................... 8

ARGUMENT ........................................................... 9

I.    The Court Should Affirm Dismissal of Appellant's Illinois Wage Payment and Collection Act Claim Because the Amended Complaint Does Not Plead an Enforceable Employment Agreement Under Illinois Law ............................................................ 9

    A.    The Illinois Wage Payment and Collection Act ..................................... 9

    B.    Apellant Does Not Plausibly Allege an Agreement Entitling Him to Wages Under the IWPCA ................................................. 10

        1.    Before August 22, 2020, the Parties Did Not Mutually Assent to an Unequivocal Promise to Pay Das More Than $300,000 in Wages ..................................... 11

        2.    The Written SST Plan Is Not an "Agreement" Because the Plan's Express Disclaimers Negate Mutual Assent ................... 17

            a.    The Court Is Not Bound By the Definition of "Agreement" Prescribed Under the Illinois Administrative Code ............................................ 18

            b.    A Provision Expressly Disclaiming the Existence of a Contract Precludes Formation of an Agreement Under the IWPCA ........................................... 27

    C.    Appellees Did Not Promise Appellant Payment of an "Earned Bonus" Under the IWPCA ................................................. 30

II.    The District Court Correctly Dismissed the Amended Complaint's Fraudulent Misrepresentation Claim ............................................ 35

    A.    The Fraudulent Misrepresentation Claim is Based Upon a Future Event and Does Not Involve a Scheme to Defraud .............................. 35

B.    Appellant's Fraud Allegations Do Not Satisfy Rule 9(b)'s Heightened Particularity Standard........................................................ 38

CONCLUSION.................................................................................................... 39

CERTIFICATE OF COMPLIANCE…………………………………………………40

PROOF OF SERVICE…………………………………………………………………41

## TABLE OF AUTHORITIES

Page(s)

Cases

*Advincula v. United Blood Servs.*
  678 N.E.2d 1009 (Ill. 1996) ................................................................. 21

*Allstate Ins. Co. v. Menards, Inc.*
  258 F.3d 630 (7th Cir. 2002) .......................................................... 25, 26

*Aluminum Trailer Co. v. Westchester Fire Ins. Co.*
  24 F.4th 1134 (7th Cir. 2022) ............................................................. 8

*Asadollahi v. Spinecraft, LLC*
  No. 20-cv-2039, 2021 U.S. Dist. LEXIS 164117 (N.D. Ill. Aug. 30, 2021) ...... 32, 33

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ..................................................................... 16, 38

*Ault v. C.C. Servs., Inc.*
  597 N.E.2d 720 (Ill. App. Ct. 1992) ..................................................... 36

*Balmes v. Ill. Bell Co.*
  No. 15-cv-2685, 2016 WL 1019764 (N.D. Ill. Mar. 15, 2016) ......................... 30

*Bay v. Cassens Transp. Co.*
  212 F.3d 969 (7th Cir. 2000) ............................................................. 7

*Boaden v. Dep't of Law Enforcement*
  664 N.E.2d 61 (Ill. 1996) ...................................................... 20, 22, 23, 27

*Brand v. Comcast Corp.*
  No. 12-cv-1122, 2013 WL 1499008 (N.D. Ill. Apr. 11, 2013) ...................... 13, 18

*Brown v. Lululemon Athletica, Inc.*
  No. 10-cv-05672, 2011 WL 741254 (N.D. Ill. Feb. 24, 2011) ......................... 9

*Bushman v. Pure Plant Food Int'l, Ltd.*
  330 N.W.2d 762 (S.D. 1983) .............................................................. 16

*Cal. Pub. Utils. Comm'n v. F.E.R.C.*
  29 F.4th 454 (9th Cir. 2022) ............................................................. 23

*Camilotes v. Resurrection Health Care Corp.*
  No. 10-cv-366, 2012 WL 2905528 (N.D. Ill. July 16, 2012) ...................... 18, 28

*Carrasco v. Freudenberg Household Prods., LP*
  No. 18-cv-3591, 2019 WL 5456145 (N.D. Ill. Oct. 24, 2019) ................................ 29

*Chagoya v. City of Chi.*
  992 F.3d 607 (7th Cir. 2021) ........................................... 9, 10, 12, 14, 16

*City of Freeport v. Ill. State Labor Relations Bd.*
  554 N.E.2d 155 (Ill. 1990) .............................................. 20, 25

*Costello v. BeavEx, Inc.*
  810 F.3d 1045 (7th Cir. 2016) ...................................................... 9

*Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*
  20 F.4th 303 (7th Cir. 2021) ....................................................... 3

*Desnick v. Am. Broad. Cos.*
  44 F.3d 1345 (7th Cir. 1995) ..................................................... 36

*Ellis v. Allstate Ins. Co.*
  479 F. Supp. 2d 782 (N.D. Ill. 2006) ........................................... 36

*Gagnon v. Schickel*
  983 N.E.2d 1044 (Ill. App. Ct. 2012) ........................................ 36

*Grant v. Bd. of Educ. of City of Chi.*
  668 N.E.2d 1188 (Ill. App. Ct. 1996) ........................................ 12

*Harris v. Seyfarth Shaw LLP*
  No. 09-cv-3795, 2010 WL 3701322 (N.D. Ill. Sept. 9, 2010) ................................ 18

*Hess v. Bresney*
  784 F.3d 1154 (7th Cir. 2015) ........................................... 13, 30, 31, 33

*Ill. Consol. Tel. Co. v. Ill. Commerce Comm'n*
  447 N.E.2d 295 (Ill. 1983) .............................................. 20, 25

*Jenkins v. White Castle Mgmt. Co.*
  No. 12-cv-7273, 2016 WL 5476234 (N.D. Ill. Sept. 29, 2016) ................................ 28

*Korean Am. Broad. Co. v. Korean Broad. Sys.*
  No. 09-cv-6665, 2011 U.S. Dist. LEXIS 63855 (N.D. Ill. June 9, 2011) .............. 37

*Landers-Scelfo v. Corp. Off. Sys., Inc.*
  827 N.E.2d 1051 (Ill. App. Ct. 2005)..............................9, 11, 14, 15, 16, 17, 22, 25

*LeDonne v. Axa Equitable Life Ins. Co.*
  411 F. Supp. 2d 957 (N.D. Ill. 2006) ............................................. 35, 37

*McCleary v. Wells Fargo Securities, LLC*
  29 N.E.3d 1087 (Ill. App. Ct. 2015) ................................................................. 23, 24

*McHugh v. Westpac Banking Corp.*
  No. 93-cv-3058, 1995 WL 476590 (N.D. Ill. Aug. 8, 1995) ..................................... 35

*McLaughlin v. Sternberg Lanterns, Inc.*
  917 N.E.2d 1065 (Ill. App. Ct. 2009)........................................................ 13, 33, 34

*McLeary v. Wells Fargo Sec., LLC*
  2015 IL App (1st) 141287 ...................................................................................... 34

*Montero v. JPMorgan Chase & Co.*
  No. 14-cv-9053, 2016 WL 7231604 (N.D. Ill. Dec. 14, 2016)................................. 29

*Mooney v. Wyndham Worldwide Operations, Inc.*
  2014 WL 2959270 (N.D. Ill. July 1, 2014) ...................................................... 18, 28

*N. Trust Co. v. Bernardi*
  504 N.E.2d 89 (Ill. 1987) ............................................................................... 20, 26

*O'Grady v. SSI (U.S.), Inc.*
  2024 IL App (1st) 230127-U .................................................................................. 30

*P.H. Mallen Co. v. Dep't of Fin.*
  372 Ill. 598 (1939) ................................................................................................ 26

*Patterson v. Life Ins. of N. Am.*
  No. 20-cv-688, 2021 U.S. Dist. LEXIS 43605 (S.D. Ill. Mar. 9, 2021) .................. 10

*Raquet v. Allstate Corp.*
  501 F. Supp. 3d 630 (N.D. Ill. 2020) .............................................................. 30, 32

*Razdan v. Gen. Motors Corp.*
  979 F. Supp. 755 (N.D. Ill. 1997) ......................................................................... 35

*Reed v. Kusper*
  607 N.E.2d 1198 (Ill. 1992) .................................................................................. 20

*Reschke v. Pactiv, LLC*
  No. 14-cv-04656, 2015 WL 4428631 (N.D. Ill. July 20, 2015)............................... 38

*S.E.C. v. Chenergy Corp.*
  318 U.S. 80 (1943) ................................................................................................ 26

*Samano v. Temple of Kriya*
  166 N.E.3d 250 (Ill. App. Ct. 2020)...................................................................... 10

*Schultze v. ABN AMRO, Inc.*
   83 N.E.3d 1053 (Ill. App. Ct. 2017)................................................... 24, 25

*Skelton v. Am. Intercont'l Univ. Online*
   382 F. Supp. 2d 1068 (N.D. Ill. 2005) ................................................. 18

*Slaney v. Int'l Amateur Athletic Fed'n*
   244 F.3d 580 (7th Cir. 2001) .............................................................. 33

*Sommer v. United Savings Life Ins. Co.*
   471 N.E.2d 606 (Ill. App. Ct. 1984)..................................................... 35

*Stamatakis v. King*
   520 N.E.2d 770 (Ill. App. Ct. 1987)..................................................... 36

*Sutula-Johnson v. Office Depot, Inc.*
   893 F.3d 967 (7th Cir. 2018) .............................................................. 30

*Tao v. Simplex Inv., LLC*
   2022 IL App (1st) 211040-U ....................................................... 19, 33, 34

*Tennessen v. Ill. Bell Tel. Co.*
   No. 15-cv-2784, 2016 WL 521046 (N.D. Ill. Feb. 10, 2016) ................... 28

*United States v. Mead Corp.*
   533 U.S. 218 (2001) ........................................................................... 22

*United States v. Webster*
   775 F.3d 897 (7th Cir. 2015) .............................................................. 31

*Watts v. ADDO Mgmt., LLC*
   97 N.E.3d 75 (Ill. App. Ct. 2018)........................................................ 19

*West v. Am. Tel. & Tel. Co.*
   311 U.S. 223 (1940) ..................................................................... 23, 26

*Wharton v. Comcast Corp.*
   912 F. Supp. 2d 655 (N.D. Ill. 2012) ........................................ 10, 27, 29

*Wilkinson v. Acxiom Corp.*
   611 F. Supp. 3d 547 (N.D. Ill. 2020) ........................................ 18, 27, 28

*Winakov v. Annuzio*
   99 N.E.2d 191 (Ill. 1951) ................................................................... 20

*Yamaha Corp. of Am. v. State Bd. of Equalization*
   960 P.2d 1031 (Cal. 1998) ................................................................. 22

*Zabinsky v. Gelber Grp., Inc.*
    807 N.E.2d 666 (Ill. App. Ct. 2004) .................................................................. 21

<u>Statutes & Regulations</u>

Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* .................*passim*

820 ILCS 115/2 ......................................................................................... 9, 21, 26

820 ILCS 115/3 ................................................................................................... 9

820 ILCS 115/11 ............................................................................................... 18

820 ILCS 115/12 ............................................................................................... 22

56 Ill. Adm. Code 300.450 ................................................................................. 19

56 Ill. Adm. Code. 300.500 ............................................................................... 30

56 Ill. Adm. Code 300.500(a) ..................................................................... 30, 34

56 Ill. Adm. Code 300.500(d) ..................................................................... 30, 32

28 U.S.C. § 1291 ................................................................................................. 1

28 U.S.C. § 1332(a) ............................................................................................ 1

<u>Other Authorities</u>

Fed. R. Civ. P. 9(b) ............................................................................ 2, 7, 34, 38

Fed. R. Civ. P. 12(b)(6) ......................................................... 1, 2, 3, 4, 5, 7, 8, 32, 39

Restatement (Second) of Contracts § 3 (1981) .......................................... 19, 22

Black's Law Dictionary (abridged 5th ed. 1983) ........................................... 22

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

Pursuant to Circuit Rule 34(f), Appellees believe oral argument is warranted because it will aid the Court's resolution of this appeal by providing the Court an opportunity to inquire further into the issues raised by this appeal.

## JURISDICTIONAL STATEMENT

The Jurisdictional Statement of Plaintiff-Appellant Santanu Das ("Appellant" or "Das") is not complete and correct.

The district court's Memorandum Opinion and Order dated October 30, 2023 ("Dismissal Order") dismissed Appellant's claim under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.*, with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). The district court's Dismissal Order further dismissed Appellant's fraudulent misrepresentation claim without prejudice pursuant to Fed. R. Civ. P. 12(b)(6). The district court granted Appellant leave to file a second amended complaint curing the defects in the dismissed fraud claim by November 20, 2023. But Appellant did not file a second amended complaint.

On November 21, 2023, the district court issued a final and formal entry of judgment that converted the dismissal of Appellant's fraudulent misrepresentation claim into a dismissal with prejudice. (*See* Judgment in a Civil Case, A-1.)

Appellant filed a timely Notice of Appeal to this Court on November 14, 2023. Appellees agree this Court has appellate jurisdiction under 28 U.S.C. § 1291.

Appellees also agree that federal diversity jurisdiction exists in this case, pursuant to 28 U.S.C. § 1332(a). Specifically, complete diversity of citizenship exists between the parties, and the amount in controversy exceeds $75,000.

## STATEMENT OF THE ISSUES FOR REVIEW

1.     Whether the district court properly dismissed Appellant's claim under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.*, pursuant to Fed. R. Civ. P. 12(b)(6), where (i) Appellant did not plead a plausible employment agreement or contract; (ii) Appellant's alleged employment agreement disclaims mutual assent between the parties; and (iii) Appellant is not entitled to an "earned bonus" under the purported employment agreement.

2.     Whether the district court properly dismissed Appellant's fraudulent misrepresentation claim, pursuant to Fed. R. Civ. P. 12(b)(6), where (i) the claim is based upon a future event; (ii) the claim does not plead a plausible scheme to defraud; and (iii) the claim fails to satisfy the heightened pleading standard under Fed. R. Civ. P. 9(b).

## STATEMENT OF THE CASE

### A.     Nature of the Case[1]

Appellant began working for Appellee Tata Consultancy Services, Ltd. ("Tata") on or around September 2010.  (Am. Cplt. at ¶ 7, A-23.)  During his tenure at Tata, qualified employees in his sales unit were eligible for several incentive compensation plans.  (*Id.* at ¶ 9, A-23.)  On or around April 2020, Appellee Amit Bajaj ("Bajaj") announced a new incentive compensation program he called Sales Swat Tribe ("SST").  (*Id.* at ¶ 11, A-23.)  Appellees subsequently engaged in conversations with Appellant relating to the SST Incentive Plan, which were followed by a PowerPoint presentation that discussed the SST Incentive Plan on August 13, 2020.  (*Id.* at ¶¶ 12–14, A-24.)  The PowerPoint expressly states that the SST Incentive Plan contains discretionary factors which include, but are not limited to, Tata's success a whole.  (*Id.*, Ex. A at 3–4, A-33–A-34.)

On or around August 22, 2020, Tata distributed the final written SST Incentive Plan to Appellant.  (*Id.* at ¶¶ 15–16, A-24–A-25.)  The SST Incentive Plan contains express language indicating (i) the incentive bonus is discretionary; (ii) that it does not form a contract and (iii) any prior incentive plans and/or agreements are considered null and void.  (*Id.*, Ex. B at 2, A-36).  Tata paid Appellant $97,000 in connection with the SST Incentive Plan.  (*Id.* at ¶ 18, A-25.)

---

[1]  Because Appellant appeals the district court's final decision granting Appellees' motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6), this Statement of the Case accepts all well-pled facts alleged in the Amended Complaint as true at this procedural stage.  *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307 (7th Cir. 2021) (citation omitted).

### B.     Proceedings and Disposition Below

Appellant initiated this lawsuit by filing a three-count complaint in the United States District Court for the Northern District of Illinois on December 13, 2022.  (Dkt. 1.[2])  The original complaint contained a wage claim and a retaliation claim, both brought pursuant to the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq*.  The original complaint also contained an unjust enrichment claim.  On February 13, 2023, Defendant-Appellees moved to dismiss the entire Complaint pursuant to Fed. R. Civ. P 12(b)(6).  (Dkt. 12.)  Appellant filed a brief in response (Dkt. 16), and Appellees filed a reply (Dkt. 18).  On May 24, 2023, the district court granted Appellees' motion and dismissed the original complaint in its entirety, without prejudice.  (Dkt. 22.)

Appellant filed an Amended Complaint on June 14, 2023.  (*See* A-22–A-36.)  The Amended Complaint re-pleaded the same three causes of action contained in the original Complaint (Counts II, IV and V).  The Amended Complaint also alleged claims for breach of oral contract (Count I) and fraudulent misrepresentation (Count III).  On July 10, 2023, Appellees filed a motion to dismiss the Amended Complaint in its entirety, pursuant to Federal Rule 12(b)(6).  (Dkt. 29.)  Appellant filed a response, (Dkt. 32) and Appellees replied (Dkt. 32).  On October 30, 2023, the district court granted Appellees' motion to dismiss and dismissed the repleaded claims (Counts II, IV and V) with prejudice.  (Dismissal Order at 12, A-13.)  The district

---

[2]  All citations beginning with "Dkt. _____" are citations to entries on the district court's docket.  The pagination for Appellees' Supplemental Appendix begins at "A-14."

court also dismissed Counts I and III without prejudice and allowed Appellant leave to file a second amended complaint by November 20, 2023. (*Id.*)

Appellant did not file a second amended complaint. On November 14, 2023, Appellant filed a Notice of Appeal to this Court. Appellant only appeals the district court's dismissal of Count II and Count III of the Amended Complaint.

## SUMMARY OF ARGUMENT

The principal question presented on appeal is whether Defendants-Appellees formed an "agreement" to pay Plaintiff-Appellant an "earned bonus" under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.* Under Illinois law, the answer is *No*. The district court correctly concluded that Appellant's Amended Complaint does not state a plausible IWPCA claim, and dismissed the claim with prejudice. This Court should affirm the district court's dismissal of Appellant's deficient IWPCA claim, as well as his inadequately pled common law fraud claim.

I.    Appellant does not dispute that no contract exists between him and the Appellees. And, Appellant did not appeal the district court's dismissal of his breach of contract claim. The first question on appeal concerns only whether he has alleged a plausible "agreement" for purposes of the IWPCA.

The Amended Complaint does not allege sufficient facts to withstand a motion to dismiss under Rule 12(b)(6). Appellant primarily asserts an agreement was formed through various oral communications (and a PowerPoint slide deck) that he exchanged with Appellees between April and August 2020. But even when viewing the Amended Complaint's allegations in the light most favorable to Appellant, he does not allege Appellees made an "unequivocal promise" to pay him an incentive bonus

-5-

at any point during that time period.  Thus, Appellant cannot base his IWPCA claim on interactions with Appellees that occurred prior to Tata's dissemination of the Sales Swat Tribe written incentive plan ("SST Incentive Plan") on August 22, 2020.  No "agreement" was formed between the parties prior to that date.

Nor afterwards.  Appellant is also mistaken in his claim that the SST Incentive Plan constitutes an "agreement" under the IWPCA.  It does not.

First, this Court need not defer to the Illinois Department of Labor's regulatory definition of "agreement" promulgated in 2014.  The term "agreement" is well-understood and not ambiguous under Illinois law, and courts do not owe deference to an administrative agency's interpretation of unambiguous statutory language.  Further, the regulatory definition of "agreement" is predicated on an erroneous interpretation of the law that finds no support in Illinois state-court decisions.  There is no sound basis for this Court to defer to a state agency's erroneous interpretation of state law.  This Court is not bound by, and should not adopt, the DOL's expansive definition of "agreement" in construing the scope of that term under the IWPCA.

Second, the SST Incentive Plan contains express language disclaiming the formation of a contract.  Under established common law principles, there can be no mutual assent between the contracting parties when a compensation plan contains such a disclaimer.  An "agreement" is formed only upon the mutual assent between the parties.  Without mutual assent, no agreement exists.  And a disclaimer like the one contained in the SST Incentive Plan negates the mutual assent required for an agreement.  Indeed, that is the majority view of the Illinois state and federal courts

that have addressed this issue. This Court should likewise hold that the SST Incentive Plan's contractual disclaimer precludes formation of an IWPCA agreement.

II.     Even if this Court defers to the regulatory definition of "agreement," affirmance of the district court's decision is still warranted because the SST Incentive Plan does not entitle Appellant to an "earned bonus" under the IWPCA. The SST Incentive Plan makes clear that any bonus awarded under the plan is *discretionary* in nature, and discretionary bonuses are not subject to the IWPCA. It does not matter that the district court did not analyze this argument below. Of course, that inquiry was not necessary given Appellant's failure to plead an agreement in the first place. But because this Court reviews the district court's decision *de novo*, it may affirm dismissal of the IWPCA claim on any basis supported by the record. *See, e.g.*, *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972–73 (7th Cir. 2000).

III.     Finally, Appellant does not plead a plausible claim for fraudulent misrepresentation. This is true for three reasons. First, this claim is based solely on alleged future or intended events—*not* statements of preexisting circumstances. Second, Appellant does not allege a plausible scheme to defraud. Third, Appellant's threadbare Amended Complaint does not satisfy the heightened "particularity" standard applicable under Fed. R. Civ. P. 9(b).

IV.     In sum, the district court properly dismissed the IWPCA and fraudulent misrepresentation claims pursuant to Fed. R. Civ. P. 12(b)(6). This Court should affirm the district court's dismissal of those claims with prejudice.

## STANDARD OF REVIEW

The Court of Appeals reviews the district court's Rule 12(b)(6) dismissal of Plaintiff-Appellant's Amended Complaint for failure to state a claim *de novo*, "accepting all well-pleaded factual allegations as true and drawing permissible inferences in the plaintiff's favor." *Aluminum Trailer Co. v. Westchester Fire Ins. Co.*, 24 F.4th 1134, 1136 (7th Cir. 2022) (citing *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016)).

## ARGUMENT

**I.     The Court Should Affirm Dismissal of Appellant's Illinois Wage Payment and Collection Act Claim Because the Amended Complaint Does Not Plead an Enforceable Employment Agreement Under Illinois Law**

### A.     The Illinois Wage Payment and Collection Act

The Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.*, "provide[s] employees with a cause of action against employers for the timely and complete payment of earned wages or final compensation, without retaliation from employers." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016) (quoting *Byung Moo Soh v. Target Mktg. Sys., Inc.*, 817 N.E.2d 1105, 1107 (Ill. App. Ct. 2004)); *see also* 820 ILCS 115/3. The statute defines "wages" as "compensation owed an employee by an employer pursuant to an employment contract or *agreement* between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2 (emphasis added); *see also Chagoya v. City of Chi.*, 992 F.3d 607, 624 (7th Cir. 2021) ("To state a claim under the IWPCA, employees are 'required to demonstrate that they are owed compensation from defendants pursuant to an employment agreement.'" (quoting *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016))). An employee has no IWPCA claim unless the employer and employee agreed the former would compensate the latter for the particular work purportedly performed. *See Chagoya*, 992 F.3d at 624; *Brown v. Lululemon Athletica, Inc.*, No. 10-cv-05672, 2011 WL 741254, at *3 (N.D. Ill. Feb. 24, 2011).

Appellees acknowledge that, for purposes of the IWPCA, an "employment agreement need not be a formally negotiated contract." *Landers-Scelfo v. Corp. Off.*

*Sys., Inc.*, 827 N.E.2d 1051, 1059 (Ill. App. Ct. 2005). But importantly, the IWPCA "provides no substantive relief beyond what the underlying employment contract requires." *Chagoya*, 992 F.3d at 624 (quoting *Enger*, 812 F.3d at 570). The employer is held only to its promise under the employment agreement. *See id.*; *Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 658 (N.D. Ill. 2012) ("The IWPCA therefore does not provide an independent right to payment of wages and benefits; instead, it only enforces the terms of an existing contract or an agreement."). Nothing more. *See also Samano v. Temple of Kriya*, 166 N.E.3d 250, 267–68 (Ill. App. Ct. 2020) (no IWCPA claim where court "cannot find that plaintiff established mutual assent on the most critical part of her employment agreement with defendant"); *Patterson v. Life Ins. of N. Am.*, No. 20-cv-688, 2021 U.S. Dist. LEXIS 43605, at *10–12 (S.D. Ill. Mar. 9, 2021) (although agreement existed for IWPCA purposes, holding plaintiff's claim to potential compensation never ripened into an actual obligation to pay plaintiff pursuant to the agreement).

### B.     Appellant Does Not Plausibly Allege an Agreement Entitling Him to Wages Under the IWPCA

The threshold issue in this appeal is whether Appellant adequately alleges the existence of an agreement that entitles him to the wages he seeks to recover by this lawsuit. As the Seventh Circuit has cautioned, "[i]t is not enough to allege 'the existence of *any* employment contract or agreement': the [plaintiffs] must allege the existence of a contract or agreement that specifically gives [the plaintiffs] a right to the wages they seek." *Chagoya*, 992 F.3d at 624–25 (cleaned up & citation omitted). Appellant raises two principal arguments to support his theory of an enforceable

agreement with Appellees. First, he asserts an agreement was formed months prior to Tata's issuance of the written SST Incentive Plan. Second (and alternatively), he claims the SST Incentive Plan (issued on August 22, 2020) constitutes an agreement that entitles him to $335,040 in unpaid wages. Both arguments are unavailing.

### 1. Before August 22, 2020, the Parties Did Not Mutually Assent to an Unequivocal Promise to Pay Das More Than $300,000 in Wages

The Amended Complaint does not allege facts plausibly showing formation of an implicit agreement based on verbal communications before August 22, 2020. *See, e.g.*, *Landers-Scelfo*, 827 N.E.2d at 1058 (noting an agreement "can be entirely implicit"). Here, Das argues he "plead[ed] ample facts which informed Tata and Bajaj that he contends they owe him more than $300,000 in unpaid wages pursuant to an agreement." (Op. Br. at 7.) But the allegations in the Amended Complaint provide no credence for that claim. The Amended Complaint merely alleges "weekly calls with the SST salespeople" during which "Defendant Bajaj and others verbally laid out the parameters of the compensation plan, telling the salespeople that if they met its objectives, they would make *at least the same and most likely significantly more than they had in the past*." (Am. Cplt. at ¶ 13, A-24 (emphasis added).) Das claims "Defendant Bajaj explained that the salespeople would receive percentages of revenue increases-with [*sic*] the percentage increasing based upon the volume of growth." (*Id.*) Das also alleges that "Defendant Bajaj and other company representatives continually told Plaintiff and the other members of the sales team that if they met certain targets, they would receive certain compensation." (*Id.*) But none of these purported oral communications plausibly indicates Appellees promised

to pay Das more than $300,000 if he met the unspecified "certain targets" alleged in the Amended Complaint.

The same is true of the August 13, 2020 PowerPoint deck that Das attached to his Complaint. While he insists the PowerPoint "confirmed what Das contends Bajaj said," the slides belie that allegation. (*See* Op. Br. at 7.) Nowhere in the PowerPoint deck did Tata "guarantee[] the salespeople certain commissions." (Am. Cplt. at ¶ 14, A-24.) Nor do the slides "confirm[] the percentages of incentive compensation based upon a 'baseline target' and an 'overachievement target.'" (*Id.*) And, nowhere in the PowerPoint presentation does Tata unequivocally promise to pay Das (or any other salesperson) a specific, monetary amount based on his subsequent performance in the nascent SST Incentive Plan.[3] Like the alleged pre-August 2020 communications between the parties, the PowerPoint slides do not specifically provide Das a right to the relief he seeks here. Even if the Court assumes, *arguendo*, the PowerPoint is an agreement, that would not be enough to show Das's entitlement to more than $300,000 in wages because the presentation promises nothing of the sort. *See Chagoya*, 992 F.3d at 625 (finding the record "devoid of any implicit agreement between the parties or of any acquiescence by the [defendant] that [plaintiffs] would be compensated for the activities at issue"); *Grant v. Bd. of Educ. of City of Chi.*, 668 N.E.2d 1188, 1196 (Ill. App. Ct. 1996) (rejecting IWPCA claim because CBA did not

---

[3] Although "an employer's acquiescence or the existence of a custom or practice may constitute an agreement to compensate for such activities," *Chagoya*, 992 F.3d at 625, the Amended Complaint alleges no such custom or practice that would entitle Das to the more than $300,000 he seeks by his IWPCA claim. Instead, the Amended Complaint alleges the novelty of the initiative. *See* Am. Cplt. at ¶ 13, A-24 ("The SST was the first sales initiative of its kind, so a compensation plan had to be created from scratch.").

require payment of accumulated unused sick leave); *Brand v. Comcast Corp.*, No. 12-cv-1122, 2013 WL 1499008, at *6 (N.D. Ill. Apr. 11, 2013) ("It is not sufficient for an IWPCA claimant to allude to a 'policy' to pay overtime.").  At most, the PowerPoint merely suggests Das would be *eligible* to receive a bonus calculated under the "MMU SI Plan model for SST" generally described therein.

"Eligibility, of course, is no guarantee."  *Hess v. Bresney*, 784 F.3d 1154, 1162 (7th Cir. 2015).  As this Court has explained, a plaintiff "might very well be eligible for a bonus, but due to a host of factors, not receive one."  *Id.*; *see also McLaughlin v. Sternberg Lanterns, Inc.*, 917 N.E.2d 1065, 1071 (Ill. App. Ct. 2009) ("If no such unequivocal promise was made, then the employee is not entitled to any part of the bonus pursuant to section 2 of the [IWPCA].").  And indeed, that is exactly what happened here.  (*See* § I.B.2, *infra*.)  There is no statement in the PowerPoint that could reasonably be construed as "the kind of unequivocal promise that is required under applicable Illinois law" for an IWPCA claim.  *Hess*, 784 F.3d at 1162.  Moreover, even if Das "believe[d] that conversations about the incentive plan during weekly meetings gave rise to a binding obligation to pay a certain bonus. . . . his independent belief adds up to only half an agreement."  (Dismissal Order at 9, A-10.)   Without any plausible allegation that the parties mutually agreed to an unequivocal promise by Tata to pay Das a precise amount in wages, the IWPCA claim must fail.  Therefore, the district court correctly concluded that "Das has not pointed to any 'unequivocal promise.'"  (*Id.* (citation omitted).)

Das asserts "the holdings" of two cases support his claim that an agreement with Tata existed before August 22, 2020. But he is mistaken—neither case bolsters his argument. In *Chagoya*, the Seventh Circuit affirmed summary judgment in favor of the defendant-employer on plaintiff-employee's IWPCA claim. *See* 992 F.3d at 625. Specifically, the *Chagoya* Court held an agreement did not exist because "without any other evidence in the record beyond *personal convictions* that they should have been paid, the [employees] have failed to demonstrate a genuine dispute of material fact to survive summary judgment." *Id.* (emphasis added). So in fact, the "holding" of *Chagoya* undermines Das's argument claiming an agreement was formed, over time, in the months before dissemination of the SST Incentive Plan. As in *Chagoya*, no facts give rise to plausible inference of an implicit agreement between the parties. *See id.* (finding "no agreement—explicit or implicit—between the parties that the City would provide overtime compensation" for off-duty time spent by police officers).

Das fares no better in his citation to the intermediate Illinois appellate decision in *Landers-Scelfo v. Corporate Office Systems, Inc.*, 827 N.E.2d 1051 (Ill. App. Ct. 2005). In *Landers-Scelfo*, plaintiff alleged her employer "agreed to pay commissions to her according to a formula (the compensation formula) set out in a letter that it sent to her when she hired her." *Id.* at 1055. The employer subsequently paid plaintiff commissions consistent with that compensation formula, for almost one year, in a total amount exceeding $450,000. *Id.* And when the employer stopped paying her the commissions due under the compensation formula, plaintiff sued under the IWPCA. *Id.* In finding plaintiff alleged an "agreement" under the statute, the court

-14-

focused principally on whether the parties' course of conduct indicated "mutual assent to terms that support the recovery." *Id.* at 1059 (noting "employers and employees can manifest their assent to conditions of employment by conduct alone"). As the court explained, "[the employer] could have manifested its assent to plaintiff's commission arrangement simply by paying her according to it, and plaintiff could have manifested her assent to [employer] by continuing to work after it began paying her." *Id.* The defendant's historical practice of paying the plaintiff the commissions due in accordance with the formulas described in her onboarding letter evinced the parties' mutual agreement to that compensation structure.

But that is not what happened here. *Landers-Scelfo* does not support Das's assertion that an unwritten, implicit agreement existed prior to August 22, 2020. Most basically, *Landers-Scelfo* involved a *written* document sent directly to plaintiff from her employer. Further, the written document did not contain any discretionary language—payment of the commissions under the written formula was mandatory. *See id.* at 1055. And Das cannot point to any historical pattern or practice whereby Tata compensated him according to the same framework he allegedly discussed with Tata and Bajaj at 2020 meetings, or as described in the Aug. 13, 2020 PowerPoint.[4] This contrasts starkly with the fact pattern in *Landers-Scelfo*. *See* 827 N.E.2d at 1060 ("We do not see how the terms of any employment of plaintiff by Synergy could have been other than those on which it paid her for almost a year."). Here, Das pleads

---

[4] Das alleges he received his first payment under the SST Incentive Plan, in the amount of $97,000, in June 2021. (Am. Cplt. at ¶ 18, A-25.)

himself out of a plausible appeal to past practice by his allegation that "[t]he SST was the first sales initiative of its kind."  (Am. Cplt. at ¶ 13, A-24.)  Unlike in *Landers-Scelfo*, Das does not allege any custom or practice, by Appellees, to pay him the maximum possible compensation purportedly due under a brand new incentive plan.  *See also* Dismissal Order at 9, A-10 ("Nor has Das shown that past practice between the parties would plausibly indicate mutual assent."); *Chagoya*, 992 F.3d at 625 (no implicit agreement and noting weak evidence of a custom or practice to pay plaintiffs for the alleged unpaid wages at issue).

Thus, to the extent Das predicates his IWPCA claim against Appellees exclusively on communications and activities that occurred prior to Tata's issuance of the written SST Incentive Plan (including the Aug. 13, 2020 PowerPoint), the IWPCA claim fails.  Illinois law is clear: Without an unequivocal promise by Appellees to compensate Das more than $300,000 pursuant to the SST Incentive Plan (none exists here), no "agreement" exists under the IWPCA.  The Court should affirm the dismissal of Count II of the Amended Complaint.

In the final analysis, no case can rectify or excuse Appellant's failure to allege enough facts to ripen his IWPCA claim from speculative to plausible under *Iqbal*. *Landers-Scelfo* merely holds that the parties' *conduct* may establish mutual consent, and the employer's acquiescence suffices to form an implied employment agreement under the IWPCA.  *See* 827 N.E.2d at 1059 (citing *A.J. Johnson Paving Co. v. Industrial Comm'n*, 412 N.E.2d 477 (Ill. 1980)); *see also Bushman v. Pure Plant Food Int'l, Ltd.*, 330 N.W.2d 762, 766 (S.D. 1983) (holding that an employer, by repeatedly

paying a bonus as if it were nondiscretionary, caused the bonus to become a term of its workers' employment). But this case bears no resemblance to *Landers-Scelfo.* Appellees never exhibited conduct indicating their agreement to pay Das the maximum possible amount he believed he was owed under the SST Incentive Plan. No past practice, custom, or anything else evinces mutual assent necessary for an agreement under the IWPCA. *Landers-Scelfo* is inapposite and not on-point.

### 2. The Written SST Plan Is Not an "Agreement" Because the Plan's Express Disclaimers Negate Mutual Assent

Appellant alternatively argues that his IWPCA claim survives based on the "formal" written SST Incentive Plan he received from Tata in mid-August 2020.[5] The district court rejected this argument based on the disclaimers included within the SST Incentive Plan:

> The SST incentive plan provides: "Payment under this Plan is subject to the company's discretion. It does not create a contract between you and TCS. . . ." (Dkt. 23-2 at 2). The plan gave Tata "sole and total discretion" to determine "whether there is any bonus, the amount, timing, and whether individual employees are rewarded." (*Id.*) Tata "reserved the right to withdraw, and/or not renew" the plan. (*Id.*)

Dismissal Order at 8, A-9.

In holding that these disclaimers precluded an agreement under the IWPCA, the district court contributed to an intra-district split on this issue in the Northern District of Illinois: "The majority view in this District is that such disclaimers dissolve an IWPCA claim by negating mutual assent." Dismissal Order at 8–9, A-9–A-10

---

[5] At certain points in his Opening Brief, Appellant inaccurately states that the SST Incentive Plan was dated August 20, 2020. (*See* Op. Br. at 10.) In fact, it was dated August **22**, 2020. (*See* Am. Cplt., Ex. B at 1, A-35.)

(citing cases).[6]  *See also Harris v. Seyfarth Shaw LLP*, No. 09-cv-3795, 2010 WL 3701322, at *2 (N.D. Ill. Sept. 9, 2010) (Bucklo, J.) ("Courts in this District appear to be divided on the question whether, as in the case of traditional contracts, employee handbook disclaimers also preclude the existence of 'agreements' in this more general sense.").  Finding the majority view more persuasive, the district court rebuffed Das's "second campaign for the minority view" as "no more convincing than his first." Dismissal Order at 9, A-10; *see also* Mem. Op. & Order dated May 24, 2023, at 6–7, A-19–A-20 (dismissing Das's original IWPCA claim and "declin[ing] Das's invitation to part with the majority view" on this issue).

Because the standard of review on appeal is *de novo*, the Court has the power to dispel this intra-District split and make the majority view the controlling law in this Circuit.  The Court should provide definitive guidance on the issue of whether disclaimers can negate mutual assent required for an enforceable agreement under Illinois law.  No Seventh Circuit precedent directly addresses this question.

> a.    **The Court Is Not Bound By the Definition of "Agreement" Prescribed Under the Illinois Administrative Code**

Although the IWPCA does not define the term "agreement," it charges the Illinois Department of Labor with enforcement of the statute.  *See* 820 ILCS 115/11. The IWCPA also authorizes the Director of Labor ("Director") "to 'promulgate rules

---

[6] In particular, the district court cited several decisions that have applied the majority view: *Wilkinson v. Acxiom Corp.*, 611 F. Supp. 3d 547 (N.D. Ill. 2020); *Mooney v. Wyndham Worldwide Operations, Inc.*, No. 13-cv-6592, 2014 WL 2959270 (N.D. Ill. July 1, 2014); *Brand v. Comcast Corp.*, No. 12-cv-1122, 2013 WL 1499008 (N.D. Ill. Apr. 11, 2013); *Camilotes v. Resurrection Health Care Corp.*, No. 10-cv-366, 2012 WL 2905528 (N.D. Ill. July 16, 2012); *Harris v. Seyfarth Shaw LLP*, No. 09-cv-3975, 2010 WL 3701322 (N.D. Ill. Sept. 9, 2010); *Skelton v. Am. Intercont'l Univ. Online*, 382 F. Supp. 2d 1068 (N.D. Ill. 2005).

and regulations necessary to administer and enforce the provisions of'" the IWPCA. *Watts v. ADDO Mgmt., LLC*, 97 N.E.3d 75, 81 (Ill. App. Ct. 2018) (quoting 820 ILCS 115/12). In 2014, the Director issued an administrative rule defining "agreement" in the context of the IWPCA:

> "Agreement" means the manifestation of mutual assent on the part of two or more persons. An agreement is broader than a contract and an exchange of promises or an exchange is not required for an agreement to be in effect. An agreement may be reached by the parties without the formalities and accompanying legal protections of a contract and may be manifested by words or by any other conduct, such as past practice. Company policies and policies in a handbook create an agreement even when the handbook or policy contains a general disclaimer such as a provision disclaiming the handbook from being an employment contract, a guarantee of employment, or an enforceable contract. **While a disclaimer may preclude a contract from being in effect, it does not preclude an agreement by two or more persons regarding terms set forth in the handbook relating to compensation to which both have otherwise assented.** An agreement exists even if does [*sic*] not include a specific guarantee as to the duration of the agreement or even if one or either party reserves the right to change the terms of the agreement.

56 Ill. Adm. Code 300.450 (2014) (emphasis added), *as amended*, 47 Ill. Reg. 5406 (2023). *See also* Restatement (Second) of Contracts § 3 (1981) ("An agreement is a manifestation of mutual assent on the part of two or more persons.").

Generally, Illinois courts "give substantial weight and deference to these regulations, 'as courts appreciate that agencies can make informed judgments upon issues that are related to their areas of experience and expertise.'" *Tao v. Simplex Inv., LLC*, 2022 IL App (1st) 211040-U, ¶ 20 (quoting *McLaughlin*, 917 N.E.2d at 1071). The Illinois Supreme Court has "recognized that courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute." *Ill. Consol. Tel. Co.*

*v. Ill. Commerce Comm'n*, 447 N.E.2d 295, 300 (Ill. 1983) (citations omitted). "A significant reason for this deference is that courts appreciate that agencies can make informed judgments upon the issues, based upon their experience and expertise." *Id.* (citations omitted). Such deference, however, is not absolute.

Notwithstanding the deference due to "a reasonable interpretation of a statute by the agency charged with its administration and enforcement," "an agency's construction is not binding on the court." *Boaden v. Dep't of Law Enforcement*, 664 N.E.2d 61, 71 (Ill. 1996) (McMorrow, J., concurring); *see also Reed v. Kusper*, 607 N.E.2d 1198, 1202 (Ill. 1992) ("Of course, we are not bound by an administrative agency's interpretation of a statute.") (citing *City of Decatur v. Am. Fed'n of State, Cty., & Mun. Employees, Local 268*, 522 N.E.2d 1219 (Ill. 1988)). Courts may reject "the erroneous construction of a statute" by an administrative agency. *Boaden*, 664 N.E.2d at 65 (majority opinion); *accord N. Trust Co. v. Bernardi*, 504 N.E.2d 89, 93– 94 (Ill. 1987); *Winakov v. Annuzio*, 99 N.E.2d 191, 196–97 (Ill. 1951). And for good reason: "Reviewing courts may not rubber-stamp administrative decisions they deem inconsistent with the statutory mandate or that frustrate the policy underlying the statute." *City of Freeport v. Ill. State Labor Relations Bd.*, 554 N.E.2d 155, 164 (Ill. 1990) (citing *Bureau of Alcohol, Tobacco & Firearms v. Fed. Labor Relations Auth.*, 464 U.S. 89 (1983)); *accord Bernardi*, 504 N.E.2d at 94 ("Our deference to administrative expertise does not license a 'governmental agency to extend the operation of a statute by administrative regulation.'" (quoting *P.H. Mallen Co. v. Dep't of Fin.*, 372 Ill. 598, 601 (1939))).

As Appellant acknowledges, "[t]he Parties agree that the 'formal' SST Plan is not a contract." (Op. Br. at 10.) And indeed, Appellant has not appealed the district court's dismissal of his breach of contract claim. Appellant instead argues that the Director's regulatory definition of "agreement" is dispositive and asks this Court to rule that such disclaimers do not prevent the formation of mutual assent required for an agreement under the IWPCA. (*See id.* at 11.) But Appellant's argument cannot be reconciled with foundational principles of administrative law.

The Court need not defer to the Director's definition of "agreement" because the statutory provision at issue is unambiguous. Specifically, section 2 of the IWPCA defines "wages" as "any compensation owed an employee by an employer pursuant to an employment contract *or agreement* between the 2 parties . . . ." 820 ILCS 115/2 (emphasis added). Relevant here, the term "agreement" has a settled definition at common law—a background against which courts presume the Illinois General Assembly to have legislated. *See, e.g., Advincula v. United Blood Servs.*, 678 N.E.2d 1009, 1017 (Ill. 1996). In Illinois, "[a] term of well-known legal significance can be presumed to have that meaning in a statute," and "common law meanings of words and terms may be assumed to apply in statutes dealing with new or different subject matters, to the extent that they appear fitting and absent evidence indicating a contrary meaning." *Id.* (citation omitted). And long before the Director issued the IWPCA regulation at issue here (in 2014), Illinois courts had no trouble interpreting the meaning of "agreement" under the Act without aid of an agency regulation. *See, e.g., Zabinsky v. Gelber Grp., Inc.*, 807 N.E.2d 666, 671 (Ill. App. Ct. 2004) ("An

'agreement' is broader than a contract and requires only a manifestation of mutual assent on the part of two or more persons; parties may enter into an 'agreement' without the formalities and accompanying legal protections of a contract.") (citing Black's Law Dictionary 35 (abridged 5th ed. 1983); Restatement (Second) of Contracts § 3, cmt. a, at 13 (1981)); *Landers-Scelfo*, 827 N.E.2d at 1068 (same). Because the term "agreement" is well-settled and unambiguous, there is no basis for this Court to defer to the Director's interpretation. *See Boaden*, 664 N.E.2d at 65 (declining to defer to agency's interpretation of a provision of the Illinois Human Rights Act "[a]s we find that the statute is not ambiguous").

Further, the Illinois Department of Labor does not have specialized expertise interpreting the meaning of "agreement" under state law. Courts properly defer to an agency's interpretation to capture the "benefit of specialized experience" that an agency possesses, which may prove valuable when facing "highly detailed" regulatory schemes. *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001). But when a state agency's interpretation implicates a term with a settled meaning under existing law, the expertise-based rationale for deference does not apply. *See, e.g.*, *Boaden*, 664 N.E.2d at 65 (stating that an agency's interpretation of an *ambiguous* statute may be entitled to deference "[w]here based on agency expertise"). While the IWPCA empowers the Director to "promulgate rules and regulations necessary to administer and enforce" the Act, *see* 820 ILCS 115/12, the General Assembly did not assign to the Director the task of redefining established common law terms. *See also Yamaha Corp. of Am. v. State Bd. of Equalization*, 960 P.2d 1031, 1036 (Cal. 1998) (explaining

an agency's interpretation of a statute "does not implicate the exercise of a delegated lawmaking power"). Here, the Director's labor-regulation expertise is unnecessary to determine whether a contract disclaimer vitiates an agreement under Illinois law.

Nothing in Title 56 of the Illinois Administrative Code indicates the Director relied on agency-specific knowledge or expertise in formulating the IWPCA's definition of "agreement." And this Court is just as capable as a state agency "to giv[e] effect to the intent of the legislature as expressed through the plain language of the statute." *Boaden*, 664 N.E.2d at 66. Using interpretative tools to determine the meaning of "agreement" under a state statute "is a task squarely in the federal judiciary's wheelhouse." *Cal. Pub. Utils. Comm'n v. F.E.R.C.*, 29 F.4th 454, 465 (9th Cir. 2022) (declining to defer to agency's interpretation of state law because agency lacked sufficient expertise); *see also West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) ("State law is to be applied in the federal as well as the state courts and it is the duty of the former in every case to ascertain from all the available data what the state law is and apply it . . . .").

Additionally, the regulation's expansive definition of "agreement" finds no support in Illinois decisional law. No Illinois court has ever ruled that an agreement exists, under the IWPCA, notwithstanding inclusion of terms disclaiming the existence of a contract. Appellant claims *McCleary v. Wells Fargo Securities, LLC*, 29 N.E.3d 1087 (Ill. App. Ct. 2015), "held that the plaintiff stated a claim for violation of the IWPCA despite the employer maintaining 'absolute discretion' in its Plan." (Op. Br. at 12.) But *McCleary* does not further Appellant's argument. In *McCleary*,

the plaintiff's IWPCA claim was predicated on the defendant's alleged breach of contract for abuse of discretion. *See id.* at 1095 ("Where a plaintiff has pled that he had a reasonable expectation to a bonus from a defendant that abused its broad contractual discretion by arbitrarily withholding the bonus in a manner not reasonably anticipated by the parties at the time of *contract* formation, a valid cause of action has been sufficiently pled [under the IWPCA] . . . .") (emphasis added). But unlike in *McCleary*, Appellant does not allege breach of any contract on appeal; rather, Appellant admits a contract did not exist. Nor did *McCleary* analyze whether a disclaimer that repudiates the existence of a contract can also negate mutual assent to sever an agreement.[7] *McCleary* does not bear on this appeal.

The other case Appellant cites likewise provides him no solace. Citing *Schultze v. ABN AMRO, Inc.*, 83 N.E.3d 1053 (Ill. App. Ct. 2017), Appellant argues "an oral agreement for a discretionary bonus could be enforceable as an agreement under the IWPCA based upon the parties' past practices." (Op. Br. at 12.) But *Schultze* is easily distinguishable. Unlike here, *Schultze* concerned an oral agreement with no written disclaimers. *See Schultze*, 83 N.E.3d at 1055, 1059–61. The Court did not mention, much less apply, the Director's regulatory definition of "agreement." Moreover, the Court held plaintiff's employer made him an unequivocal promise of an earned bonus,

---

[7]  In another signal that intermediate Illinois appellate courts do not consider themselves bound by the administrative definition of "agreement," the *McCleary* court neither discussed nor cited it.

which did not happen here. (*See* § I.C., *infra*.) *Schultze* does not move the needle in Appellant's favor.[8]

Because no Illinois decision has held an "agreement" survives notwithstanding an express disclaimer like the one in the SST Incentive Plan, the regulatory definition of "agreement" is erroneous and deserves no deference from this Court. *See, e.g.*, *City of Freeport*, 554 N.E.2d at 164 (holding that an agency's erroneous construction of a statute "is not binding upon a reviewing court" and finding that agency's interpretation of statutory definition was erroneous). First, there is no tradition whereby Illinois courts have deferred to the regulatory construction of "agreement." *Cf. Ill. Consol. Tel. Co.*, 447 N.E.2d at 300 (explaining "deference to administrative constructions is often applied in the case of factual situations where constructions have been consistently adhere to for a long period of time") (citing cases). Second, no state-law rule of decision provides support for the agency's view. *See, e.g.*, *Allstate Ins. Co. v. Menards, Inc.*, 258 F.3d 630, 637 (7th Cir. 2002) (explaining that, "in determining the content of state law, the federal courts must assume the perspective of the highest court in that state and attempt to ascertain the governing substantive law on the point in question") (citations omitted). While the Seventh Circuit generally affords "great weight" to Illinois's intermediate appellate courts, *see id.*, such an exercise is fruitless where, as here, those courts have provided little to no guidance

---

[8] Neither does *Landers-Scelfo*, which held only that an employment agreement under the IWPCA can be "entirely implicit" and based on the parties' course of conduct. *See* 827 N.E.2d at 1067–68 (holding "employers and employees can manifest their asset to conditions of employment by conduct alone"). Also, *Landers-Scelfo* did not involve any express disclaimers of contract formation.

on the question presented.[9]  Without a "considered judgment" from an intermediate Illinois appellate court, this Court lacks a suitable "datum for ascertaining state law" on whether a disclaimer precludes formation of an agreement under the IWPCA.  *See id.* (quoting *West*, 311 U.S. at 237).  Given this gap in state law, the Seventh Circuit should look to the decisions of the Northern District of Illinois on this issue as persuasive authority.  (*See* § I.B.2.b, *infra*.)

In sum, the definition of "agreement" promulgated by the Director in 2014 neither binds nor warrants deference from this Court.  The common law meaning of "agreement" is unambiguous and therefore governs here.  There is no indication the General Assembly intended for "agreement" to be understood more expansively than at common law.  After all, the General Assembly defined multiple terms in the IWCPA, and it obviously could have chosen to define "agreement" if it deigned to do so.[10]  But it did not.  If this Court finds the Director's definition of "agreement" dispositive here—whether by affording it administrative deference or otherwise—the Court would essentially "extend the operation of" the IWPCA "by administrative regulation." *Bernardi*, 504 N.E.2d at 94.  Such a maneuver is improper under Illinois law.  *See, e.g.*, *P.H. Mallen Co.*, 372 Ill. at 601 ("If the act is inadequate the remedy lies with the legislature.").  An agency's action "may not stand if the agency has misconceived the law." *S.E.C. v. Chenergy Corp.*, 318 U.S. 80, 94 (1943).  And so here,

---

[9]  Appellees agree that the Illinois Supreme Court has not weighed in on this specific issue. (*See* Op. Br. at 12.)

[10]  *See* 820 ILCS 115/2 (defining "wages," "employer," "employee," "payroll card," "payroll card account" and "payroll card issuer").

the Director's erroneous interpretation of the meaning of "agreement" is not binding on this Court. This Court cannot license a state agency to expand the operation of the IWPCA under the guise of administrative deference. *Boaden*, 664 N.E.2d at 65.

> **b.** **A Provision Expressly Disclaiming the Existence of a Contract Precludes Formation of an Agreement Under the IWPCA**

Courts in the Northern District of Illinois have issued conflicting decisions on "[t]he question of whether disclaimer language in an employee handbook or compensation plan defeats a finding of mutual assent to the handbook or plan's terms." *Wilkinson v. Acxiom Corp.*, 611 F. Supp. 3d 547, 556 (N.D. Ill. 2020) (noting this question "has produced a split among judges of this court"); *see also Wharton*, 912 F. Supp. 2d at 659–62 (collecting cases and discussing the intra-district split). Appellant urges this Court to follow *Wharton* and adopt the "minority view" that says a compensation plan may be enforced under the IWPCA as an agreement despite the presence of disclaimers. The Court should reject Appellant's invitation.[11]

The more prevalent view in the Northern District of Illinois faithfully adheres to basic principles of contract law and should be adopted as the controlling rule in this Circuit. Here, the SST Incentive Plan has an express disclaimer stating, in pertinent part, that "[p]ayment under this Plan is subject to the company's discretion. *It does not create a contract between you and TCS . . . .*" (Am. Cplt., Ex. B at 2, A-36 (emphasis added).) Under the majority view, "such a disclaimer dissolves a claim

---

[11] As a general matter, Appellees do not dispute that mutual assent may serve as the basis for an IWPCA claim even in situations where there is no binding contract. The question at issue presently is whether a disclaimer embedded within an *agreement* (not a contract) negates the mutual assent necessary for an IWPCA claim.

under the IWPCA." *Jenkins v. White Castle Mgmt. Co.*, No. 12-cv-7273, 2016 WL 5476234, at *12 (N.D. Ill. Sept. 29, 2016); *see also Camilotes v. Resurrection Health Care Corp.*, No. 10-cv-366, 2012 WL 2905528, at *6 (N.D. Ill. July 16, 2012) (holding a disclaimer disavowing creation of a contract "negates a finding of mutual assent for purposes of an agreement under the IWPCA"). As the majority view reasons, "[t]he inclusion of such a disclaimer shows that [the employer] never intended to mutually assent to a contract *or agreement* with its employees." *Id.* (emphasis added); *see also Mooney v. Wyndham Worldwide Operations, Inc.*, No. 13-cv-6592, 2014 WL 2959270, at *2 (N.D. Ill. July 1, 2014) (finding that disclaimer in compensation plan reserving to defendant the right to "amend, change or cancel" the plan "[a]t any time" and "for any reason" showed defendant did not assent to the plan). And tellingly, the majority view has continued to prevail in the Northern District of Illinois since promulgation of the DOL's "agreement" regulation in 2014. *See, e.g., Jenkins, supra; Wilkinson*, 611 F. Supp. 3d at 557 (finding "no sufficient reason to depart from the majority view"); *Tennessen v. Ill. Bell Tel. Co.*, No. 15-cv-2784, 2016 WL 521046, at *4 (N.D. Ill. Feb. 10, 2016) (finding disclaimer in defendant's code of business conduct stating that it "is not a contract of employment and does not create contractual rights of any kind between AT&T and its employees" put the code "outside the realm of agreements subject to the IWPCA, which require a manifestation of 'mutual consent' from the parties") (citing *Zabinsky*, 807 N.E.2d at 671). The minority view has not attracted a substantial following among district courts post-2014.

This Court should reject the minority view because it cannot be reconciled with blackletter contract law. In an early case adopting the minority view, a district court concluded there was "plainly mutual assent to the terms" in the defendant's employee handbooks. *Wharton*, 912 F. Supp. 2d at 660. But the court in *Wharton* did not augment this conclusory reasoning. Instead, the court deemed it "irrelevant" that the handbooks even contained a disclaimer. *Id.* The court also found it "similarly irrelevant that all the handbooks purport to be 'guidelines' and retain [defendant's] right to change the handbooks at any time." *Id.* Without citing a single case in support, *Wharton* reasoned that "[r]eserving the right to change the terms prevents the creation of a promise, but it does not vitiate" a defendant's "assent to the terms in the handbooks." *Id.* But this position does not make sense. There is no mutuality of assent—as there must be for any agreement—if the defendant expressly disclaims such assent in writing. The minority view effectively nullifies any such disclaimer and demands that courts ignore the plain language of the underlying written plan.

In addition to *Wharton*, Appellant cites three district court cases adopting the minority view post-2014. None of them proves persuasive either. In two of those cases, the court automatically adopted the DOL regulation's definition of "agreement" without considering whether such deference is even warranted. *See Carrasco v. Freudenberg Household Prods., LP*, No. 18-cv-3591, 2019 WL 5456145, at *3 (N.D. Ill. Oct. 24, 2019); *Montero v. JPMorgan Chase & Co.*, No. 14-cv-9053, 2016 WL 7231604, at *6 (N.D. Ill. Dec. 14, 2016). As explained above, that regulatory definition deserves no deference and does not bind this Court. But the court in *Carrasco* and

*Montero* improperly assumed otherwise. Additionally, the other court ignored the regulation entirely and repeated *Wharton*'s flawed reasoning without scrutiny—a judicial maneuver akin to the children's game of "telephone." *See Balmes v. Ill. Bell Co.*, No. 15-cv-2685, 2016 WL 1019764, at *7 (N.D. Ill. Mar. 15, 2016) (citing *Wharton* and adopting view that a disclaimer vitiates a contract but not an agreement).

### C. Appellees Did Not Promise Appellant Payment of an "Earned Bonus" Under the IWPCA

Even if the Court finds an agreement exists, Appellant still must plausibly allege entitlement to an "earned bonus" under the IWPCA. It is well-established that "the IWPCA applies only to 'earned' bonuses, not discretionary or gratuitous bonuses." *Raquet v. Allstate Corp.*, 501 F. Supp. 3d 630, 646 (N.D. Ill. 2020) (citing *Sutula-Johnson v. Office Depot, Inc.*, 893 F.3d 967, 975 (7th Cir. 2018)); *see also* 56 Ill. Adm. Code. 300.500 ("The Department [of Labor] does not maintain jurisdiction over discretionary or gratuitous bonuses."). Specifically, "[a]n employee has a right to an earned bonus when there is an *unequivocal promise* by the employer and the employee has performed the requirements set forth in the bonus agreement between the parties and all of the required conditions for receiving the bonus set forth in the bonus agreement have been met." 56 Ill. Adm. Code 300.500(a) (emphasis added).[12] In contrast, a bonus is "discretionary" under the IWPCA when "the terms associated with the earning of the bonus are indefinite or uncertain, such as bonus being upon

---

[12] The Seventh Circuit has held the regulation defining "earned bonus" under the IWPCA (*i.e.*, 56 Ill. Adm. Code 300.500(a)) is entitled to substantial weight and deference under Illinois law. *See Hess*, 784 F.3d at 1162 (citation omitted); *see also O'Grady v. SSI (U.S.), Inc.*, 2024 IL App (1st) 230127-U, at ¶¶ 22–23 (deferring to regulatory definitions of "earned bonus" and "discretionary bonus" under 56 Ill. Adm. Code 300.500(a) & (d), respectively).

a positive evaluation of the 'employee's performance' and not when the earning of a bonus is based on objective factors such as length of service, attendance or sign-on or relocation incentives." *Id.* 300.500(d).  No earned bonus, no IWPCA claim.

As an initial matter, Appellant's Opening Brief does not argue that Appellees made an unequivocal promise to pay him an earned bonus.  The term "earned bonus" appears nowhere in his Opening Brief.  He has accordingly waived any argument that the SST Incentive Plan offered to pay him an earned bonus under the IWPCA.  *See United States v. Webster*, 775 F.3d 897, 904 (7th Cir. 2015) (holding that appellant waived argument on appeal when it failed to raise the argument in opening brief).

The SST Incentive Plan contains no unequivocal promise to pay Appellant a bonus.  In determining whether Appellees promised to pay an earned bonus, the Court must look to the terms of the written incentive plan.  *See Hess*, 784 F.3d at 1162 (analyzing terms of letter describing employee's mere eligibility for a bonus).  The plain language of the SST Incentive Plan makes clear that, at most, Tata only offered Das a discretionary bonus:

> Any incentive bonus made to an individual under the Plan is made at the *sole discretion* of the geography head, TCS Global CFO, and TCS Global Head of HR. It is at the *sole and total discretion* of management whether there is any bonus, the amount, timing, and whether individual employees are rewarded, and such determination will be based on multiple variables including, but not limited to, the associate and unit's contribution. It should not be assumed that past payments have established a pattern for future payments.
>
> Incentives and payments will be based on many factors, including but not limited to the overall performance of TCS and is not part of the employee's salary.
>
> TCS reserves the right to withdraw, and/or not renew, this Plan.

. . . .

Payment under this Plan is subject to the company's discretion.

Am. Cplt., Ex. B at 2, A-36 (emphasis added).

In short, "although Plaintiff may have been eligible for a bonus, Defendant[s] maintained full discretion to award—or refuse to award—any bonuses." *Raquet*, 501 F. Supp. 3d at 647 (holding plaintiff failed to establish entitlement to an earned bonus under the IWPCA). First, the SST Incentive Plan unambiguously states that any incentive bonus is *discretionary* in nature—not guaranteed. Second, the SST Incentive Plan states the employee's eligibility for a bonus will be "based on numerous factors, including but not limited to the success of the business in achieving its earning goals, as well as by the individual contribution of each employee to business goals, as determined by business management."[13] (Am. Cplt., Ex. B at 2, A-36.) Third, the SST Incentive Plan enumerates none of the objective factors that the regulation cites in distinguishing a discretionary bonus from an earned bonus. *See* 56 Ill. Adm. Code 300.500(d) (citing "length of service, attendance or sign-on or relocation incentives" as objective factors not indicative of a discretionary bonus). Therefore, even if the SST Incentive Plan constitutes an agreement, it plainly does not promise payment of an earned bonus.

---

[13] In tying the award of an incentive (or not) to the employer's performance, the SST Incentive Plan thereby bases its bonus structure on an indefinite factor that is the hallmark of a discretionary bonus. *See* 56 Ill. Adm. Code 300.500(d) (citing "positive evaluation of an employee's performance" as an example of an "indefinite or uncertain" term that characterizes a discretionary bonus).

The case of *Asadollahi v. Spinecraft, LLC*, No. 20-cv-2039, 2021 U.S. Dist. LEXIS 164117 (N.D. Ill. Aug. 30, 2021), is illustrative on this point. In *Asadollahi*, the district court dismissed an IWPCA claim on Rule 12(b)(6) grounds because the "employment agreement does not provide the requisite entitlement to a bonus." *Id.* at *7. As here, the agreement in *Asadollahi* provided only that plaintiff was *eligible* for a bonus "based on the performance of the company and on the Employee personal performance objectives as determined by the annual performance evaluation." *Id.* at *8. Consequently, the court held that "[t]his language does not create an unequivocal entitlement of a bonus but instead includes certain conditions that make the award of that bonus discretionary." *Id.*; *see also Hess*, 784 F.3d at 1162; *Tao*, 2022 IL App (1st) 211040-U, at ¶ 22 (finding that offer letter stating plaintiff "will be eligible for participation in the company's bonus plan," a "discretionary bonus plan" that pays employees for "excellent performance," "did not form an unequivocal promise to pay a bonus and therefore the bonus was discretionary"). Where, as here, the metrics associated with the SST Incentive Plan are contingent, indefinite or uncertain, the bonus is discretionary and thus, not subject to the IWPCA.

The Illinois Appellate Court's decision in *McLaughlin v. Sternberg Lanterns, Inc.*, 917 N.E.2d 1065 (Ill. App. Ct. 2009), further supports dismissal of the IWPCA claim here.[14] In *McLaughlin*, a former employee sought an earned bonus under the

---

[14] While the district court did not address the earned vs. discretionary bonus issue in the Dismissal Order, this Court "may affirm the district court's dismissal on any ground supported by the record, even if different from the grounds relied upon by the district court." *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).

Act.  Under the terms of the employment agreement, the plaintiff's bonus was to be based on any annual increase in the percentage of the plaintiff's sales.  *See* 917 N.E.2d at 1066.  But before the end of the year, defendant terminated plaintiff for cause and plaintiff filed a complaint seeking a *pro rata* share of his bonus.  *See id.* at 1067–68.  The Appellate Court affirmed judgment for defendant on the IWPCA claim, finding "the language in the parties' contract was not an unequivocal guarantee that the plaintiff would receive the bonus as compensation."  *Id.* at 1071.  Instead, "the bonus was clearly conditional, dependent on whether sales for the defendant increased over the previous year."  *Id.*

As in *McLaughlin*, the bonus referenced in Tata's SST Incentive Plan "was not guaranteed to be paid."  *Id.*; *see also Tao*, 2022 IL App (1st) 211040-U, at ¶ 29 (affirming dismissal of IWPCA claim for failure to state a claim where "[t]he offer letter made clear that not only was the bonus discretionary, the award of a bonus would depend on a subjective performance evaluation").[15]  Because the SST Incentive Plan contains express language offering only discretionary payments, Appellant's IWPCA claim fails.  Without allegations plausibly showing Appellees unequivocally promised to pay Appellant an "earned bonus"—as that term is defined under 56 Ill. Adm. Code 300.500(a)—he cannot state an IWPCA claim.  Mere eligibility for a discretionary bonus does not entitle Appellant to relief under the statute.

---

[15]  *Cf. McLeary v. Wells Fargo Sec., LLC*, 2015 IL App (1st) 141287, ¶¶ 27–29 (concluding plaintiff stated an IWPCA claim where the bonus award depended on objective factors and plaintiff alleged he met all qualifying events under the incentive plan).

II.     **The District Court Correctly Dismissed the Amended Complaint's Fraudulent Misrepresentation Claim**

There is no dispute that Appellant must satisfy Rule 9(b)'s heightened particularity standard to plead a claim for fraudulent misrepresentation. Appellant is mistaken, however, in his belief that his fraud claim met that heightened standard. Seventh Circuit case law is replete with references to the difficulties inherent in successfully pleading a fraud claim, particularly those which are based upon a future event. Appellant does not meet his burden.

A.     **The Fraudulent Misrepresentation Claim is Based Upon a Future Event and Does Not Involve a Scheme to Defraud**

Appellant's fraud claim is based upon a future event. But statements of future intention cannot support a fraud claim because alleged misrepresentations must be statements of present or preexisting facts—*not* statements of future intent or conduct. *See, e.g.*, *LeDonne v. Axa Equitable Life Ins. Co.*, 411 F. Supp. 2d 957, 960 (N.D. Ill. 2006) (*citing Sommer v. United Savings Life Ins. Co.*, 471 N.E.2d 606, 611 (Ill. App. Ct. 1984)) (in Illinois, a misrepresentation of intent to perform future conduct is not actionable absent a showing that the fraud is part of a scheme to defraud); *Sommer*, 471 N.E.2d at 611 ("Illinois law is clear that a misrepresentation as to a future promise or intent will not sustain an action for fraud.").

Moreover, expectations or opinions about future events are not actionable as fraud. *Razdan v. Gen. Motors Corp.*, 979 F. Supp. 755, 759 (N.D. Ill. 1997) (quoting *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) ("a statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities ordinarily does not constitute an actionable

misrepresentation.")).  Courts routinely dismiss fraud claims where, as here, they are based on "the prediction of future sales and the promise of guaranteeing such sales." *McHugh v. Westpac Banking Corp.*, No. 93-cv-3058, 1995 WL 476590, at *4 (N.D. Ill. Aug. 8, 1995) (finding promise to provide "an incentive compensation plan which was consistent with those being offered elsewhere in the corporate finance industry" insufficient to state a claim for fraud).  The sole exception to this rule is that the pleading, in order to withstand sufficiency attacks, must plead a "scheme to defraud." *Sommer*, 471 N.E.2d at 611.

Appellant's Opening Brief provides no credible reason as to why the district court erred in its finding that the fraud allegations failed to amount to a scheme to defraud.  Apellant frequently cites to *Gagnon v. Schickel*, 983 N.E.2d 1044 (Ill. App. Ct. 2012) and *Stamatakis v. King*, 520 N.E.2d 770 (Ill. App. Ct. 1987), for support on Appellant's fraud argument.  But these cases provide none.  Indeed, both *Stamatakis* and *Gagnon* involved trial court decisions at the summary judgment stage and whether there is a question of fact; those cases did not assess the legal sufficiency of the pleading.  The only other case Appellant cites—*Desnick v. Am. Broad. Cos.*, 44 F.3d 1345 (7th Cir. 1995)—provides zero support for his argument.  In fact, in *Desnick* this Court affirmed the trial court's dismissal of the fraud claim for the same reasons it should do so here.

An exception exists only where a false representation as to a matter of intention or future conduct is part of "a scheme or device to defraud." *Ellis v. Allstate Ins. Co.,* 479 F. Supp. 2d 782, 790 (N.D. Ill. 2006).  Allegations of such a scheme to

defraud "cannot be inferred or implied from [the] complaint . . . they must be pled with specificity." *Id; see also Ault v. C.C. Servs., Inc.*, 597 N.E.2d 720, 723 (Ill. App. Ct. 1992) (allegations of promissory fraud scheme must be "detailed and specific," including "exact" promises and dates on which they were made). As the Seventh Circuit has explained the "scheme" requirement:

> Our best interpretation is that promissory fraud is actionable only if it either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy.

*Desnick*, 44 F.3d at 1354 (affirming dismissal of fraud claim).

Appellant fails to allege such a particularly egregious scheme in his Amended Complaint. He instead alleges a single, solitary, promise: that Appellees would compensate Appellant in accordance with a formula that provides Appellant certain compensation if he produced certain results. But that "promise" is hardly a scheme, and it is certainly not "particularly egregious" nor is it " embedded in a larger pattern of deception." This one alleged oral promise is not cognizable as a scheme under Illinois case law. *Korean Am. Broad. Co. v. Korean Broad. Sys.*, No. 09-cv-6665, 2011 U.S. Dist. LEXIS 63855 (N.D. Ill. June 9, 2011) ("The alleged conduct still does not rise to the level of a pattern of fraudulent acts. Plaintiffs merely allege one promise, repeated twice, that was broken, which does not amount to the 'elaborate artifice of fraud,' that is required by the Seventh Circuit and Illinois law."); *LeDonne*, 411 F. Supp. 2d at 962 (dismissing promissory fraud claim because plaintiff's allegation of "an oral promise, issued on two occasions" was not a "scheme").

The purported promise which Appellant hangs his hat on—that Appellant will be compensated in accordance to a defined formula that increases with productivity—is nowhere in the record. The plain language of the PowerPoint establishes there was never such a promise. The PowerPoint expressly states that the SST Incentive Plan contains discretionary factors which include, but are not limited to, Tata's success a whole. (Ex. A at 3–4, A-33–A-34.) In any event, even if Appellant did plausibly plead such a promise, the single solitary promise is not enough to allege a scheme to defraud under Illinois law.

## B. Appellant's Fraud Allegations Do Not Satisfy Rule 9(b)'s Heightened Particularity Standard

To meet the required pleading standard for fraudulent misrepresentation, Appellant must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Specifically, he must plead the "who, what, when, where, and how: the first paragraph of any newspaper story." *Reschke v. Pactiv, LLC*, No. 14-cv-04656, 2015 WL 4428631, at *2 (N.D. Ill. July 20, 2015) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). This includes "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.* (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)).

Here, the Amended Complaint contains only the most skeletal allegations and generalities, and it provides no factual allegations supporting the conclusions of law. As such, Appellant cannot satisfy the high bar required for pleading a fraud claim. Stating that "Bajaj knowingly made false statements of material fact" and

"Defendant Bajaj made these representations to induce…" are insufficient to shift the pleading from speculative to plausible.  (Am. Cplt. at ¶ 33, A-27.)  These are not allegations of fact.  While the Court may accept the allegations of the pleading as true, this principle does not extend to legal conclusions.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009).  And, in any event, Appellant waives any argument on this point since he did not raise the issue in his Opening Brief on appeal.

<u>CONCLUSION</u>

The Court should affirm the district court's judgment in favor of Defendants-Appellees, and thereby affirm the district court's dismissal, with prejudice, of Plaintiff-Appellant's claims for (i) violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.*, and (ii) fraudulent misrepresentation, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limits of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(a) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 10,673 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook 12-point font.


Dated: March 11, 2024                    /s/ *Shawn D. Fabian*
                                         Shawn D. Fabian
                                         **Sheppard Mullin Richter & Hampton LLP**
                                         321 North Clark Street, 32nd Floor
                                         Chicago, IL 60654
                                         Tel: 312.499.6300

<u>**PROOF OF SERVICE**</u>

I, Shawn D. Fabian, hereby certify that on March 11, 2024, the foregoing brief of Defendants-Appellees was filed with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit using the appellate CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished via the appellate CM/ECF system.


Dated: March 11, 2024                    /s/ *Shawn D. Fabian*
                                         Shawn D. Fabian
                                         **Sheppard Mullin Richter & Hampton LLP**
                                         321 North Clark Street, 32nd Floor
                                         Chicago, IL 60654
                                         Tel: 312.499.6300