Appeal No. 23-3209

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

SANTANU DAS,

*Plaintiff-Appellant,*

v.

TATA CONSULTANCY SERVICES LTD. and AMIT BAJAJ

*Defendant-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN
DIVISION
No. 2022 CV 06988- Honorable Virginia Kendall

———

## REPLY BRIEF OF PLAINTIFF-APPELLANT

Santanu Das

———

Kristin M. Case
Case + Sedey, LLC
250 S. Wacker Dr., Ste 230
Chicago, Illinois 60606
(312) 920-0400

*Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

**ARGUMENT**                                                              **PAGE**

     I.     Appellant plead an agreement between the parties.   1

     IV.    Appellant stated a claim for promissory fraud.   13


**CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)(7)**   16

**NOTICE OF FILING AND PROOF OF SERVICE**   17

i

## **TABLE OF CASES, STATUTES AND OTHER AUTHORITIES**

**CASES**                                                          **PAGES**

*Advincula v. United Blood Services,*
   678 N.E.2d 1009 (1996)                                             8

*Balmes v. Illinois Bell Tel. Co.,*
   2016 WL 1019764, (N.D. Ill. Mar. 15, 2016)                       10

*Bausch v. Stryker Corp.,*
   630 F.3d 546 (7th Cir. 2010)                                      1

*Boaden v. Dep't of Law Enf't,*
   171 Ill. 2d 230 (1996)                                            8

*Carrasco v. Freudenberg Household Products 13 LP,*
   2019 WL 5456145 (N.D. Ill. Oct. 24, 2019)                        10

*Chagoya v. City of Chicago,*
   992 F.3d 607, 624 (7th Cir. 2021)                                 3

*City of Freeport v. Ill. St. Labor Relations Bd.,*
   135 Ill. 2d 499, 516 (1990)                                       9

*Erickson v. Pardus,*
   551 U.S. 89; 93 (2007)                                            1

*Gagnon v. Schickel,*
   983 N.E.2d 1044 (Ill. App. Ct. 2012)                            14

*Hartney Fuel Oil Co. v. Hamer,*
   998 N.E.2d 1227                                                   7

*Hess v. Bresney,*
   784 F.3d 1154 (7th Cir. 2015)                                  8, 9

*Illinois Dept. of Revenue v. Illinois Civil Serv. Comm'n,*
   357 Ill. App. 3d 352, 356–57 (1st Dist. 2005)                    6

*Jenkins v. White Castle Management,*
   2016 WL 5476234 (N.D. Ill. Sep. 29, 2016)                       11

*Landers–Scelfo v. Corporate Office Systems, Inc.*,
    356 Ill. App. 3d 1060, 1067 (2nd Dist. 2005)    3, 4, 5

*McLaughlin v. Sternberg Lanterns, Inc.*,
    395 Ill. App. 3d 536 (2009)    7

*Midwest Grinding Co. v. Spitz*,
    976 F.2d 1016 (7th Cir.1992)    1

*Montero v. JPMorgan Chase & Co.*,
    2016 WL 7231604, at *1 (N.D. Ill. Dec. 14, 2016)    10

*N. Tr. Co. v. Bernard*i,
    115 Ill. 2d 354 (1987)    10

*People v. Molnar*,
    222 Ill.2d 495, 508 (2006)    7

*People ex rel. Madigan v. Illinois Commerce Comm'n*,
    231 Ill.2d 370, 380 (2008)    7

*Reed v. Kusper*,
    154 Ill. 2d 77 (1992)    9

*Reschke v. Pactiv, LLC*,
    2015 WL 4428631 (N.D. Ill. July 20, 2015)    14

*Stamatakis v. King*,
    520 N.E. 2d 770 (Ill.App. Ct. 1987)    14

*Sutula-Johnson v. Office Depot, Inc.*,
    893 F.3d 967 (7th Cir. 2018)    12

*Swanson v. Citibank, N.A.*, 614 F.3d 400
    (7th Cir. 2010)    1

*Tennessen v. Illinois Bell Tel. Co.*,
    2016 WL 521046 (N.D. Ill. Feb. 10, 2016)    11

**STATUTES AND RULES**

Ill. Admin. Code tit. 56, § 300.450                6, 8, 9, 11

5 ILCS 100/1–1                                     7

5 ILCS 100/5–40(b)(3)(5)                           7

1 Ill. Adm.Code § 220.1000 (1994)                  7

56 Ill. Adm.Code § 300.500 (2014)                  9

**ARGUMENT**

Fed. R.Civ.P. 8 requires only that plaintiffs provide defendants with fair

notice of the claim against them and the grounds upon which it rests. *Swanson v.*

*Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010); quoting *Erickson v. Pardus*, 551

U.S. 89; 93 (2007). "One objective of Rule 8 is to decide cases fairly on their merits,

not to debate finer points of pleading where opponents have fair notice of the claim

or defense." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). Additionally,

even the more demanding Rule 9 requires only that a plaintiff plead with

particularity a "general outline of the fraud scheme" sufficient to "reasonably notify

the defendants of their purported role" in the fraud. *Midwest Grinding Co. v.*

*Spitz,* 976 F.2d 1016, 1020 (7th Cir.1992).

In asking this Court to uphold the District Court's dismissal of Appellant's

Amended Complaint, Appellees ignore these liberal pleading requirements,

misconstrue Appellant's Amended Complaint, and ask this court to refuse to defer

to Illinois administrative regulations.  For the reasons stated below, Appellant's

Amended Complaint met the pleading standards of Rules 8 and 9 and because of

that he asks this Court to overturn the District Court's dismissal of his Amended

Complaint.

I.    **Appellant plead an agreement between the parties.**

   A.  **The parties agreed to terms before August 22, 2020.**

Appellees first argue that Appellant failed to state facts evidencing mutual

assent between the parties prior to August 22, 2020 (the date Bajaj emailed the SST "Plan"). Yet, Appellant plead that Appellees told him and the rest of the SST sales team precisely what Tata would pay them in exchange for revenue increases and that those promises are captured (complete with specific formula for calculating the compensation) in the PowerPoint attached to Appellant's Amended Complaint. Appellant also plead that in response to these promises he began working to meet his sales goals. These facts, when viewed in the light most favorable to Appellant, state a claim of mutual assent.

Additionally, despite the multi-page specificity of it, Appellees claim that the PowerPoint does not guarantee incentive payments and that it "merely suggests that Das would be *eligible* to receive a bonus." Appellees argue that eligibility for compensation is no guarantee and while that may be true, it is irrelevant here because the PowerPoint contains absolutely no discretionary language. In fact, contrary to what Appellees try to lead this Court to believe, it does not even contain the word "eligible" anywhere in it. Instead, the PowerPoint pages labeled "MMU SI Plan for SST" contain affirmative language and detailed formulae for how Tata would calculate the compensation. There is no language, whatsoever, in there that would suggest that Appellant was merely "eligible" for these amounts or that these amounts might not be paid per the formula.

Appellees also argue that because the PowerPoint does not explicitly promise to pay Appellant "more than $300,000 in incentive compensation" that it cannot

2

evidence mutual assent. That argument makes no sense. Of course, the PowerPoint does not promise to pay Appellant "more than $300,000" because when it was drafted no one knew how much Appellant would sell and, therefore, earn under the formula. However, Appellant plead that Appellees orally and, in the PowerPoint, promised to pay him percentages of revenue growth calculated using the formula reflected in the PowerPoint. This exchange of promises easily establishes mutual assent.

**B. Tata's past practices also indicate mutual assent.**

In his Amended Complaint, Appellant plead that in each of the ten years prior to the SST Initiative, at the start of the fiscal year, Tata would give its salespeople the formula by which it would calculate their incentive compensation in the coming year. That the formula was always based on a percentage of sales. Appellant also plead that Tata always paid their salespeople their incentive compensation exactly per these formulae. This past practice also indicates mutual assent.

Appellees argue that two cases upon which Appellant relies-*Chagoya v. City of Chicago*, 992 F.3d 607, 624 (7th Cir. 2021) and *Landers–Scelfo v. Corporate Office Systems, Inc.*, 356 Ill. App. 3d 1060, 1067 (2nd Dist. 2005) are inapplicable to this case. First, Appellant cited *Chagoya* in explaining the difference between a contract and an agreement under the IWPCA. Appellees try to distinguish *Chagoya* by arguing that the case was eventually dismissed on summary judgment but that

3

dismissal (and the reasons for it) are irrelevant in considering whether Appellant stated a claim under the IWPCA.

Second, the facts of *Landers-Scelfo* are like those here. In *Lander-Scelfo,* the Court discussed what may constitute an agreement under the IWPCA. This was before the Illinois Department of Labor adopted its regulation defining the term "agreement" in 2014. Appellees argue that *Landers-Scelfo* is inapplicable because the case involved a written document which contained a commission formula. That, however, was not the main holding in the case and, anyway, Appellant in our case also plead a written document containing a compensation formula. Regardless, Appellees ignore the central holding in *Landers-Scelfo* which had nothing to do with the written document. The plaintiff in *Landers-Scelfo* filed her claim against two alleged employers-her original employer (who created the written document containing her commission formula) and a payroll company who later came on the scene and continued paying the plaintiff pursuant to the original commission formula. The payroll company argued that it was not bound by the agreement between the original employer and the plaintiff because it had not mutually assented to its terms. In reversing the district court's dismissal of plaintiff's claim against the payroll company, the appellate court held. "…because an employment agreement can be entirely implicit, alleging that an entity paid a worker according to a demonstrable formula for work done is sufficient to raise an inference that the entity and the worker had an employment agreement that embodied the formula."

*Id.* at 1067. The holding in *Landers-Scelfo* is directly on point and illustrates that the past practice Appellant in his Amended Complaint also establishes mutual assent.

Appellees argue that Appellant cannot rely on Tata's historical practice because the SST initiative was new. That argument misses the mark. While compensation formulas differed year to year, what remained the same is Tata's practice of calculating and paying commissions, without deviation or discretion, per whatever formula it provided to its salespeople that year. It is true that the SST initiative was new but the presentation of annual compensation formula and the consistent payment of the compensation pursuant to that formula was not.

As discussed above, Appellant plead a multitude of facts indicating mutual assent well before Appellees issued what it purported to be the formal SST "Plan." For these reasons, the Court should find that Appellant sufficiently plead that the parties formed an agreement before August 22, 2020 and reverse the dismissal of his Amended Complaint based on that pleading alone.

**C. The SST "Plan's" disclaimers do not negate an agreement.**

In his Amended Complaint, Appellant alternatively plead that the August 22, 2020 SST Plan formed an agreement between the parties even though it contained disclaimer language. Thus, even if this Court were to find that Appellant failed to plead the formation of an agreement before August 22, 2020, he, nevertheless, plead the formation of one after. In his response to Defendant's Motion to Dismiss his

5

Amended Complaint, Appellant relied on the IDOL's definition of "Agreement" which provides in relevant part:

> Company policies and policies in a handbook create an agreement even when the handbook or policy contains a general disclaimer such as a provision disclaiming the handbook from being an employment contract, a guarantee of employment, or an enforceable contract. While a disclaimer may preclude a contract from being in effect, it does not preclude an agreement by two or more persons regarding terms set forth in the handbook relating to compensation to which both have otherwise assented. An agreement exists even if does not include a specific guarantee as to the duration of the agreement or even if one or either party reserves the right to change the terms of the agreement.

56 Ill.Adm.Code § 300.450.

In ruling on Appellees' Motion to Dismiss, the District Court ignored this regulation, altogether, adopted what it called the Northern District's "majority view" and held that disclaimers in the SST "Plan" precluded mutual assent necessary to form an agreement. Appellees argue that this Court should also refuse to recognize the regulation by refusing to defer to it.

**D.     This Court should defer to 56 Ill.Adm.Code § 300.450.**

The IWPCA charges the IDOL with enforcement of the Act and authorizes the Director of Labor and her representatives to promulgate regulations to administer and enforce the provisions of the Act. 820 ILCS 115/11(d). "Although the Illinois General Assembly holds the general legislative power to determine what the law shall be, the legislature can delegate to an administrative agency the authority to execute the law." *Illinois Dept. of Revenue v. Illinois Civil Serv. Comm'n*, 357 Ill.

App. 3d 352, 356–57 (1st Dist. 2005); citing M. Barker, *An Overview of Administrative Law,* in Illinois Administrative Law, § 1.3 (Ill. Inst. for Cont. Legal Educ.1991).

Administrative regulations are passed in accordance with the Illinois Administrative Procedure Act, 5 ILCS 100/1–1 *et seq. Id*.  Administrative rulemaking in Illinois requires three steps, with each step subject to significant oversight. *Id*. First, the agency gives notice of a proposed rule after which the public may comment and/or request a public hearing on the proposal (known as the "first notice period"). 5 ILCS 100/5–40(b)(3)(5).  After that, there is a second notice and legislative review period during which the agency submits the proposal to the Joint Committee on Administrative Rules ("JCAR"), which is a bipartisan, bicameral legislative support services agency composed of members of the General Assembly. 5 ILCS 100/5–90. During this stage, JCAR reviews the proposed regulation and may file objections if there are concerns. *Id*.; 1 Ill. Adm.Code § 220.1000 (1994). Only after these steps may the agency file the proposed rule for adoption. *Id*.

Given this process and legislative oversight, in Illinois administrative regulations have the "force and effect of law" and carry "a presumption of validity." *People v. Molnar,* 222 Ill.2d 495, 508 (2006); *Hartney Fuel Oil Co. v. Hamer*, 998 N.E.2d 1227, 1238; citing *People ex rel. Madigan v. Illinois Commerce Comm'n,* 231 Ill.2d 370, 380 (2008).  And while Appellees are correct that deference is not absolute, Illinois state courts and this Court have long afforded "substantial weight

7

and deference" to administrative regulations. See, *McLaughlin v. Sternberg Lanterns, Inc.*, 395 Ill. App. 3d 536, 544 (2009)(courts appreciate that agencies can make informed judgments upon issues that are related to their areas of experience and expertise). See also, *Hess v. Bresney*, 784 F.3d 1154, 1162 (7th Cir. 2015)(deferring to IDOL's regulation defining "earned bonus" under the Wage Act).

Appellees acknowledge this history of deference but then argue that this Court should not defer to 56 Ill.Adm.Code § 300.450 which defines the term "agreement" in the IWPCA. In support of their argument Appellees rely on a handful of cases, none of which are on point. In fact, Appellees fail to cite any case in which an Illinois court or this Court refused to defer to an administrative agency's regulation.

First, Appellees argue that the Court should not defer to the definition of "agreement" in Ill. Adm. Code § 300.450 because that term had a "settled" definition at common law. Appellees cite *Advincula v. United Blood Services*, 176 Ill. 2d 1, 16 (1996) and *Boaden v. Dep't of Law Enf't*, 171 Ill. 2d 230, 239 (1996) in support of this argument but both those cases are distinguishable. *Advincula* had nothing to do with administrative deference. Instead, it dealt with the trial court's statutory construction of an undefined statutory term. In *Boaden* the question before the court was whether to defer to an administrative law judge's interpretation of an undefined statutory phrase. Neither of these cases addressed the issue of deference to an administrative agency regulation which defines a statutory term.

8

Second, Appellees cite *Reed v. Kusper*, 154 Ill. 2d 77, 86 (1992) in arguing against deference but *Reed* also dealt with an administrative hearing in which the administrative law judge interpreted an undefined statute.  It did not address the issue of deference to an administrative regulation which, as noted above, has the same legal effect as a statute. Moreover, even if *Reed* were applicable here, the Court deferred to the agency's interpretation and held:

> courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. Such an interpretation expresses an informed source for ascertaining the legislative intent. A significant reason for this deference is that agencies can make informed judgments upon the issues, based on their experience and expertise.

*Id.*

Third, Appellees cite *City of Freeport v. Ill. St. Labor Relations Bd.,* 135 Ill. 2d 499, 516 (1990) arguing that a court need not "rubber stamp" agency decisions. That is true. However, *Freeport* also did not address deference to an administrative regulation. The question there was deference to the Illinois Labor Relations Board's findings at an administrative hearing.

While Appellee's cases are not on point, *Hess*, supra, is. See, 784 F.3d at 1162.  In that case, this Court deferred to the IDOL's regulation which defined "earned bonus" and in doing so recognized that courts give regulations substantial weight and deference.  *Id*.; citing 56 Ill. Adm.Code § 300.500 (2014).  There is no reason why this Court should not similarly defer to 56 Ill.Adm.Code § 300.450 which defines "agreement."

9

Next, citing *N. Tr. Co. v. Bernard*i, 115 Ill. 2d 354 (1987) Appellees argue that deferring to the IDOL's definition of agreement will "extend the operation" of the IWPCA by regulation. However, *Bernardi* is just as inapplicable as the other cases upon which Appellees rely because the issue there involved the Director's interpretation of the unemployment statute. It did not involve deference to a well-vetted administrative regulation.  In this case, because of the extensive rulemaking process and oversight, if the Illinois legislature felt the IDOL was inappropriately expanding the statute with its definition of agreement, it had ample opportunity to say so during JCAR notice and review process.

Continuing to ignore the regulation, Appellees also argue that no Illinois case has held that an agreement survives a contract disclaimer but that is not true. *See*, for instance, *Montero v. JPMorgan Chase & Co.,* 14 CV 9053, 2016 WL 7231604, at *1 (N.D. Ill. Dec. 14, 2016)(existence of a contract disclaimer was insufficient to warrant the dismissal of plaintiff's wage claim when Plaintiff plead an agreement between the parties); *Carrasco v. Freudenberg Household Products* 13 *LP*, 2019 WL 5456145, at *3 (N.D. Ill. Oct. 24, 2019)(disclaimer does not preclude an agreement for compensation to which the parties have otherwise assented); *Balmes v. Illinois Bell Tel. Co.*, 2016 WL 1019764, at *7 (N.D. Ill. Mar. 15, 2016)(disclaimer establishes only that a contract does not exists; it is still possible, viewing all facts in the light most favorable to the plaintiff, that an agreement does).  As Appellant noted in his opening brief, these cases all came down after the IDOL issued the 2014 regulation defining

10

agreement.  Appellees cite two post-2014 cases that still held that disclaimers preclude formation of agreements: *Jenkins v. White Castle Management*, 2016 WL 5476234 and *Tennessen v. Illinois Bell Tel. Co.*, 15 C 2784, 2016 WL 521046, at *4 (N.D. Ill. Feb. 10, 2016).  Appellant acknowledges that following the passage of the regulation defining "agreement" in 2014, state and federal courts have continued to disagree as to the impact of disclaimers on agreements.  However, *Jenkins* and *Tennessen* failed to address the regulation at all and, instead, merely relied on pre-2014 case law. All the post-2014 cases that have recognized 56 Ill.Adm.Code § 300.450 have deferred to the agency's definition of agreement and held that a disclaimer does not necessarily preclude an agreement.

In this case Appellant respectfully requests that this Court do the same and defer to the agency's definition of agreement and reverse the District Court's dismissal on this point.

### E.    The incentive compensation is not a "bonus" and even if it was Appellant states a claim for recovery.

Appellees next argue that even if an agreement exists that Appellant still failed to plausibly allege entitlement to an "earned bonus." This argument fails for several reasons:

First, the nature of the compensation (bonus v. commission) is irrelevant at the pleading stage and, in fact, may not be discernible without discovery. The only

11

relevant inquiry at this stage is did Appellant state a claim for unpaid compensation under the IWPCA?  For the reasons discussed herein, he did.

Second, Appellant did not plead that Appellees owe him an "earned bonus." Instead, Appellant plead that he is owed "incentive compensation" per the agreement between he and Appellees. The incentive compensation owed to him is almost certainly commissions, not a bonus.  See, *Sutula-Johnson v. Office Depot, Inc.*, 893 F.3d 967, 976 (7th Cir. 2018)(finding that the hallmark of a commission is that it is based upon a percentage of a sale). In *Sutula-Johnson* (a case which Appellees fail to acknowledge) this Court undertook a deep analysis into the difference between commissions and bonuses under the IWPCA.  The facts of *Sutula-John*son are like those here in that Sutula-Johnson was a salesperson who alleged she was owed incentive compensation pursuant to a formula based on sales. The Court there found the incentive compensation was commissions.  The same is true here.

Third, even if the unpaid amounts were a bonus, the fact remains that Appellant plead an agreement for the compensation well before the introduction of any discretionary language.  And, even if this Court found that an agreement was not formed until the issuance of the SST "Plan" then for the reasons stated above Appellant still plead an agreement.   Whether the incentive compensation is a bonus or commission does not change the question on appeal which is did Appellant plead sufficient facts to state a claim for compensation under the IWPCA.

**II.     Plaintiff stated a claim for fraudulent misrepresentation.**

    **A.     Plaintiff plead a scheme to defraud.**

The Parties agree that to state a claim for fraudulent misrepresentation based on a future promise that a plaintiff must allege a scheme to defraud. Appellees contend that Appellant's claim is based on a "single, solitary promise" however Appellant plead far more than that. Instead, Appellant plead that Bajaj and others repeatedly told him and the other SST participants that Tata would pay them specific percentages of revenue based on detailed formula in exchange for meeting or exceeding their sales goals. Bajaj later made these same false statements in the PowerPoint he shared with the SST participants. But Bajaj's false statements did not stop there. Appellant plead that when Bajaj emailed what he purported to be the formal SST Plan (four months after Appellant started working) he told the sales team that the document attached was merely the formal version of the PowerPoint previously shared. But Bajaj lied-the document was not the same. While the first page of it was identical to the formula shared orally and contain in the PowerPoint, Bajaj slipped a second page into the formal "Plan" which contained a myriad of disclaimers that no one ever shared with Appellant or the other members of the sales team. Then, after Appellant and others exceeded their sales goals, Appellees used those disclaimers to deny Appellant more than $300,000 in wages. Appellees did the same to others as well.  These facts clearly state that Appellees engaged in a scheme over the course of several months to entice

Appellant and others to grow the company's largest accounts while never planning to keep their compensation promises.

Appellees argue that the cases upon which Appellant relies, *Gagnon v. Schickel*, 983 N.E.2d 1044 (Ill. App. Ct. 2012) and *Stamatakis v. King*, 520 N.E. 2d 770 (Ill.App. Ct. 1987) do not apply because those decisions were at summary judgment. But that is irrelevant. Both *Gagnon* and *Stamatakis* contain detailed discussions of what may constitute a scheme to defraud which is directly relevant to what facts Appellant must plead to state a claim. As both these cases found, establishing a pattern of repeated misrepresentations can establish the necessary scheme. *Id.*

**B.    Appellant plead his claim with particularity.**

Finally, Appellees claim that Appellant failed to plead his fraud claim with the particularity required by Fed. R. Civ. P 9(b) and that his Amended Complaint contains only "the most skeletal allegations and generalities…." A reading of the Amended Complaint shows that is not true.

Appellant agrees that he must "state with particularity the circumstances constituting fraud" which includes the "who, what, when, where, and how." *Reschke v. Pactiv, LLC*, No. 1:14 C 04656, 2015 WL 4428631, at *2 (N.D. Ill. July 20, 2015). Here, Plaintiff pled exactly that. He pled that from April 2020 to August 22, 2020, Defendant Bajaj repeatedly made false statements regarding the compensation that Tata would pay to Plaintiff and others if they achieved certain revenue growth

14

thresholds. Appellant plead that Appellees repeated these false promises in the PowerPoint.  Then, Appellant plead that on August 22, 2020, Bajaj made another fraudulent misrepresentation when he told Appellant and others that the "Plan" he emailed them was merely the formal version of what he had already shared in the PowerPoint.  Appellant plead that the first page of the "formal plan" was identical to what had been promised verbally and in the PowerPoint, but that Bajaj slipped in a second page which contained a plethora of disclaimers.  These allegations clearly allege the who, the what, the when and the how as required by Rule 9(b).

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant, Santanu Das, respectfully requests that this Honorable Court reverse the dismissal of his Illinois Wage Payment and Collection Act and fraudulent misrepresentation claims and remand this matter to the District Court for further proceedings.

Respectfully submitted,

**Case + Sedey, LLC**

By: ____ /s/ *Kristin M. Case*
Counsel for Plaintiff-Appellant
Santanu Das

Kate Sedey
Kristin M. Case
Case + Sedey, LLC
250 S. Wacker Dr., Ste. 230
Chicago, IL 60606
Tel.: (312) 920-0400
Fax: (312) 920-0800
*Counsel for Plaintiff-Appellant*

15

## **CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)(7)**

I hereby certify that pursuant to Fed. R. App. P. 32(a)(7), the Reply Brief of Plaintiff-Appellant Santanu Das is proportionally spaced, has a typeface of 12 points or more and contains 3,656 words including headnotes, footnotes, and quotations, as calculated using the wordcount function on Microsoft Word.

Date: April 12, 2024

By:  ___ */s/ Kristin M. Case*
Counsel for Plaintiff-Appellant
Santanu Das

Kristin M. Case
Case + Sedey, LLC
250 S. Wacker Dr., Ste. 230
Chicago, IL 60606
Tel.: (312) 920-0400
Fax: (312) 920-0800
*Counsel for Plaintiff-Appellant*

16

## <u>NOTICE OF FILING AND PROOF OF SERVICE</u>

I hereby certify that on April 12, 2024, I electronically filed the foregoing

Appellant R e p l y Brief of Plaintiff-Appellant Santanu Das with the Clerk of the

Court for the United States Court of Appeals for the Seventh Circuit by using the

CM/ ECF system. The counsel of record below in this case who are registered

CM/ECF users will be served by the CM/ECF system.

Kevin M. Cloutier
Shawn D. Fabian
SHEPPARD MULLIN RICHTER & HAMPTON LLP
321 North Clark Street, 32nd Floor Chicago, Illinois 60654

By: ___ /s/ *Kristin M. Case*
Counsel for Plaintiff-Appellant
Santanu Das

Kristin M. Case
Case + Sedey, LLC
250 S. Wacker Dr., Ste. 230
Chicago, IL 60606
Tel.: (312) 920-0400
Fax: (312) 920-0800
*Counsel for Plaintiff-Appellant*

17